# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAVID A. WARGULA, ) </br> ) </br> Plaintiff, ) </br> ) </br> vs. ) </br> ) </br> ANDREW M. SAUL, ) </br> Commissioner of Social Security, ) </br> ) </br> Defendant. ) | Case No. 20 C 568 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

David Wargula, formerly a practicing attorney, seeks to overturn the Social Security Administration's denial of his application for disability insurance benefits (DIB). Wargula contends he has progressive neurological deficits that render him unable to work, perhaps resulting from traumatic brain injury and a history of playing organized football.

An administrative law judge (ALJ) found that Wargula had severe impairments— a neurocognitive disorder, anxiety, and depression—but concluded that his impairments did not meet or equal the severity of a "listed impairment." The ALJ went on to find that Wargula could not perform his past work as an attorney and that his impairments significantly limited his residual functional capacity in various ways. The ALJ ultimately found, however, that there were jobs that Wargula could perform that existed in significant numbers. The ALJ thus concluded that Wargula did not qualify as disabled as of December 18, 2018, the date of the ALJ's decision. The Social Security

Administration's Appeals Council affirmed the ALJ's decision.

Wargula has filed suit to challenge the agency's decision. He argues that the ALJ overstated or accorded undue weight to his daily activities in determining his capacity to work; gave insufficient consideration to the opinions of his treating neurologist, Dr. James Castle, and undue consideration to the opinions of physicians who had only reviewed records; and erred in finding that his impairments did not meet or equal a listed impairment. Wargula also contends that the ALJ did not properly account for his limitations in determining his residual functional capacity. Finally, Wargula argues that the vocational expert called by the ALJ testified about available jobs that actually exceeded his abilities as found by the ALJ and that the ALJ nonetheless relied on this testimony in concluding there were jobs in sufficient numbers that he could perform.

For the reasons explained below, the Court concludes that the last of these issues has merits and by itself requires reversal of the agency's decision and remanding the case for further consideration.

**Background**

Mr. Wargula applied for DIB on November 18, 2016, claiming a disability onset date of October 16, 2015. He stated that he suffered from anxiety, depression, and a neurocognitive disorder.

The Social Security Administration (SSA) denied Wargula's application on February 23, 2017 and again upon reconsideration on May 31, 2017. Wargula then requested a hearing before an ALJ. Wargula, his wife, Angela Spinillo, and his attorney attended the hearing, which was held on September 7, 2018. The ALJ heard testimony

from Wargula, Spinillo, and Clifford Brady, an impartial vocational expert. On December 19, 2018, the ALJ issued a decision denying Wargula's DIB claim. The ALJ made two key findings, both of which Wargula challenges as erroneous: (1) that Wargula was not disabled and (2) that based on an evaluation of his residual functional capacity (RFC), he could perform jobs—other than his prior work as an attorney—that exist in significant numbers in the national economy.

When the Appeals Council denied Wargula's request for review on November 26, 2019, the ALJ's decision became the final decision of the Commissioner of Social Security. *See Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). Wargula filed this lawsuit seeking judicial review of the Commissioner's final decision, in accordance with 42 U.S.C. § 405(g). Wargula requests that this Court set aside the final decision or, in the alternative, to remand the case to the agency. The Commissioner of Social Security has moved for summary judgment on Mr. Wargula's claim.

**The ALJ's decision**

In reaching his decision, the ALJ relied on the standard five-step analysis set forth in the Social Security regulations to determine whether a social security disability benefits claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ determined that Wargula has not engaged in substantial gainful activity since his alleged disability onset date. At step two, the ALJ found that Wargula has severe impairments: a neurocognitive disorder, anxiety, and depression. Admin. Rec. at 29.

At step three, the ALJ determined that Wargula's impairments, "considered singly and in combination, do not meet or medically equal" the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Admin. Rec. at 30.

The listed impairments that the ALJ considered were 12.02 (neurocognitive disorders), 12.04 (depression), and 12.06 (anxiety). The ALJ first evaluated whether the severity of Wargula's mental impairments related to the listings satisfied the "Paragraph B" criteria. To satisfy the Paragraph B criteria, "the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves." Admin. Rec. at 30.

The ALJ found that Wargula has a moderate limitation in understanding, remembering, or applying information, noting that he "described an ability to engage in household chores, prepare meals, take care of his daughter, read, shop, use public transportation, manage funds, use a computer for e-mail, and participate in a home brewing club." Admin. Rec. at 30. The ALJ observed that Wargula has a driver's license, which reflects his ability "to understand and remember the rules of the road and is able to remember how to get places that are familiar to him and apply information." Admin. Rec. at 30. The ALJ reached these determinations after considering the testimony of Wargula and Spinillo and the opinions of Wargula's treating doctors—psychiatrist Dr. Deborah Cano, who opined that Wargula has no serious limitations in his functional abilities and could perform a job, and neurologist Dr. James Castle, who, conversely opined that Wargula is not capable of working. Admin. Rec. at 30-32, 40.

At step four of the five-step analysis, the ALJ evaluated Wargula's RFC to perform physical and mental work activities given his impairments. He concluded that Wargula has the ability to complete simple, routine tasks that do not involve multitasking

4

or significant self-direction. Admin. Rec. at 30. In making this determination, the ALJ addressed the opinions of Wargula's treating physicians, the testimony of Wargula and his wife, the vocational expert, and the state agency psychological experts.

Regarding Wargula's RFC, the ALJ gave little weight to the opinion of Dr. Castle, Wargula's treating neurologist. Dr. Castle had opined that because of Wargula's neurocognitive disorder, which Dr. Castle described as neurodegenerative, and based on the diagnosis of probable chronic traumatic encephalopathy (CTE), Wargula had extreme limitations in his "ability to maintain attention for a two-hour segment and complete a normal workday and workweek without interruptions from psychologically based symptoms." Admin. Rec. at 44. Further, Dr. Castle opined that Wargula had "marked limitations overall with regard to the claimant's mental abilities and aptitudes needed to do unskilled work, semi-skilled, or skilled work." Admin. Rec. at 44. The ALJ, however, found that the overall record, including Wargula's "activities of daily living and examination findings do not support such severe limitations." Admin. Rec. at 45.

The ALJ also concluded that Wargula's wife's testimony was not entitled to any weight regarding the issue of disability, although he did consider her observations regarding Wargula's behavioral changes. Admin. Rec. at 45. The ALJ gave considerable weight to the state agency physicians' assessment of moderate limitations and observed that treating psychiatrist Dr. Cano's progress notes showed an "intact mental status" with some improvement. Admin. Rec. at 43-45.

At the final step of the sequential evaluation process, the ALJ found that Wargula is unable to perform any of his past relevant work as an attorney. Admin. Rec. at 45. The ALJ concluded, however, that there are other jobs "in significant numbers in the

5

national economy"—including the professions of commercial cleaner, garbage collector, bench assembler, street cleaner, or electrode cleaner—that Wargula could perform given his RFC, education, and work experience. The ALJ reached this conclusion based on the vocational expert's testimony that Wargula could perform the requirements of these representative jobs. Admin. Rec. at 46. The ALJ therefore denied Wargula's application for DIB. *Id.* at 46-47.

## Discussion

After exhausting administrative remedies, a plaintiff may seek review of a denial of Social Security benefits in federal district court. 42 U.S.C. § 405(g). "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id*. The ALJ's findings of fact are conclusive if they are supported by substantial evidence. *Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016). Substantial evidence is evidence that "a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). "The court's role is not to reweigh evidence, but to determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)). The claimant bears the burden of demonstrating disability. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).

A.  **Reliance on VE's statements**

The ALJ concluded that Mr. Wargula's RFC limits him to work involving "simple routine tasks." Admin. Rec. at 30. In the next sentence, the ALJ explains that the

6

vocational expert (VE) testified about jobs that Wargula could perform on the basis that they "all have a reasoning level of 1" per the Dictionary of Occupational Titles (DOT). *Id.* at 32. This was incorrect. Some of the jobs the VE referenced actually do not have a reasoning level of one, such as the bench assembler and the street cleaner jobs, which have a reasoning level of two. The VE therefore inaccurately testified during the hearing that every job on the "representative list of jobs," including the bench assembler and street cleaner jobs, have a reasoning, mathematical, and language level of one. *Id.* at 94-96. The ALJ repeated the VE's error in his decision by stating in step five of the analysis that the jobs that Wargula could potentially perform have a reasoning level of one. *Id.* at 30-32.

Wargula contends that the ALJ erred by relying on incorrect testimony by the VE and then incorporating that testimony into his decision. Wargula also points out problems with the VE's and ALJ's reliance on the commercial cleaner job, which requires using power equipment and tools; he argues that substantial evidence does not support his ability to perform this job given the ALJ's conclusion that he cannot operate hazardous machinery. *See id*. at 33. Wargula also takes issue with the ALJ's reliance on the garbage collector job, because it requires driving a car; he contends this also conflicts with the ALJ's findings regarding his RFC. Accordingly, Wargula contends, the only job remaining among those cited by the VE is that of electrode cleaner. Wargula argues that there are insufficient jobs of this nature to warrant reliance on the job as the basis of a finding that he is not disabled.

The Court agrees with Wargula that the VE's testimony was unreliable and that the ALJ erred by relying on it without verifying its truthfulness and then incorporating the

7

VE's erroneous statements into his decision. *Id*. at 30-32. "A finding based on unreliable VE testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated." *Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008). "On remand, the ALJ should take care in assessing the reliability of any testimony from the VE." *Lewis v. Colvin*, No.13 C 5748, 2015 WL 5050230, at *17 (N.D. Ill. Aug. 25, 2015) (Mason, Mag. J.).

Wargula argues that based on Social Security Ruling (SSR) 00-4p, the ALJ had an obligation to resolve any conflict between the VE's testimony and information in the DOT but failed to full this duty. The transcript of the hearing before the ALJ reflects that the VE testified that his testimony was consistent with the DOT after the ALJ asked the VE to "tell [him] on instances in which [the VE's] testimony conflicts with the [DOT]." Admin. Rec. at 91.

In response, the Commissioner of Social Security argues that the ALJ's conclusion at step five was supported by substantial evidence based on the Seventh Circuit's decision in *Surprise v. Saul*, 968 F.3d 658 (7th Cir. 2020). In *Surprise*, the court explained that "a discrepancy between simple-task limitations and the DOT reasoning levels . . . 'is not the type of actual or apparent conflict that necessitates a resolution under SSR 00-4p' because a vocational expert and the DOT may use different terminology." *Id.* at 662-63. The court further stated that "courts have concluded only that a limitation to one- to two-step instructions disqualifies a claimant from occupations requiring [a] reasoning level [of two]." *Id.* at 663. "[T]here is no apparent conflict between a simple tasks limitation and level 3 reasoning—a more demanding standard than level 2." *Id.*; *see also Sawyer v. Colvin*, 512 F. App'x 603,

8

610-11 (7th Cir. 2013) (rejecting the plaintiff's argument that a VE's conclusion that the plaintiff could perform a job with reasoning level of three conflicted with a doctor's opinion that she should be restricted to "simple tasks" because a claimant restricted to simple tasks can perform reasoning level three tasks).

It is conceivable that some of the jobs that the ALJ and VE erroneously described as "level one" jobs could theoretically be performed by Wargula on the grounds that "level two" and perhaps even "level three" reasoning jobs are appropriate for a claimant with an RFC requiring simple, routine tasks. But the conflict asserted by the claimant in *Surprise* concerned testimony from a medical expert who stated that a claimant could perform certain jobs even though they required tasks that exceeded the limitations of the plaintiff's RFC. *Surprise*, 968 F.3d at 662. In this case, in contrast, the ALJ adopted the VE's erroneous testimony regarding the DOT's classifications of five representative jobs. Admin. Rec. 46-47. The oral hearing transcript reveals that the ALJ sought clarification from the VE multiple times regarding the reasoning, mathematical, and language development levels of each of the occupations that the VE considered and specifically pointed out in his decision that the jobs listed by the VE were appropriate options for Mr. Wargula because they had a "reasoning level of 1." Admin. Rec. 30-32, 95-96. As the Court has indicated, this was simply incorrect for certain jobs. Because Wargula's challenge to the ALJ's decision is based on an error by the ALJ, the case is not governed by *Surprise*.

"The Commissioner bears the step-five burden of establishing that the claimant can perform other work that 'exists in significant numbers in the national economy.'" *Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008) (quoting 20 C.F.R. §

9

404.1560(c)(2)); *see also Allensworth v. Colvin*, 814 F.3d 831, 835 (7th Cir. 2016). "A VE's testimony can satisfy this burden only if that testimony is *reliable*." *Overman*, 546 F.3d at 464. The *Britton* decision's mandate is clear: Wargula's challenge to the VE's erroneous testimony "is really an argument that the Commissioner failed to satisfy his step-five burden of 'providing evidence' demonstrating that other work the claimant can perform 'exists in significant numbers in the national economy.'" *Britton*, 521 F.3d at 803 (quoting 20 C.F.R. § 404.1560(c)(2)). "When the Commissioner satisfies this burden through expert testimony from a VE, that testimony must be reliable." *Id.* at 803. In this case, the Commissioner failed to meet his burden under step five of the analysis and the ALJ's decision was therefore unsupported by substantial evidence.

In short, substantial evidence does not support the ALJ's finding that Mr. Wargula is able to perform other work that exists in significant numbers in the national economy.

**B.   Wargula's remaining contentions**

Wargula's other arguments—regarding his ability to engage in activities of daily living, how evidence about that should be considered, and how the opinions of Dr. Castle should be considered vis-à-vis those of other treating and non-treating physicians—are all interrelated to each other and they all have a bearing on the question of whether Wargula's impairments meet a listed impairment, as he contends. Given the Court's resolution of the issue regarding the ALJ's consideration of the VE's erroneous testimony, which requires remand by itself, the Court is not required address these other issues in order to resolve the case. The Court specifically declines to decide the other issues because it is likely that, on remand, Wargula will present (or at least will have the opportunity to present) additional evidence regarding his impairments

and their effect on his ability to work up through his "date last insured" of December 31, 2020. This is particularly so because there is at least some evidence that Wargula's neurological condition has deteriorated progressively, such that his condition and residual functional capacity as of December 2020 conceivably might be materially worse than it was as of December 2018.

In considering the evidence on remand, the ALJ should take care to take account of *all* the so-called "subjective" evidence regarding Wargula's ability to engage in the activities of daily living, avoiding the temptation to cherry-pick that evidence for examples that tilt against a finding of disability. See, e.g., *Baldwin v. Berryhill*, 746 F. App'x 580, 583 (7th Cir. 2018); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). The ALJ should also take care to heed the admonition that the ability to engage in some activities with a relative degree of success does not necessarily equate to the ability to sustain full-time work. See, e.g., *Ghiselli v. Colvin*, 837 F.3d 771, 777-78 (7th Cir. 2016); *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). Finally, given that Wargula is claiming what amounts to a neurological disability, the ALJ should pay heed to potential differences in the way a treating neurologist (like Dr. Castle) and a treating psychiatrist (like Dr. Cole) might assess his condition.

## C. Award of benefits vs. remand for further proceedings

Wargula asks the Court to remand the case with directions to award him benefits. The Court agrees with the agency that this is inappropriate. Remand with an instruction to award benefits is the appropriate resolution "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631

F.3d 411, 415 (7th Cir. 2011). That is not the case here; factual issues remain. And this would be so even if the Court were to rule in Wargula's favor on the questions regarding the appropriate weight and consideration to be given to the opinions of Dr. Castle and Wargula's ability to engage in activities of daily living. The Court therefore overrules Wargula's request for a remand with a direction to award him disability benefits.

## Conclusion

For the reasons stated above, the Court denies the Commissioner's motion for summary judgment [dkt. no. 17], grants Wargula's request to reverse and remand the agency's decision, and directs the Clerk to enter judgment vacating the decision of the Social Security Administration and remanding the case for further consideration consistent with the Court's decision.

Date: May 17, 2021

_____
MATTHEW F. KENNELLY
United States District Judge